IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GEORGE J. WHITE, # N62969,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | Case No. 23-cv-02596-RJD |
| ) | |
| **ILLINOIS DEPT OF CORRECTIONS,** ) | |
| **WEXFORD HEALTH SOURCES, INC.,** ) | |
| **PERCY MEYERS, C. LUKING,** ) | |
| **DEEDEE BROOKHART, M. WISE, and** ) | |
| **JANE DOE #1 (P.A. or Nurse),** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff George J. White, an inmate of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit *pro se* pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. His claims arose at Lawrence Correctional Center ("Lawrence") and at Centralia Correctional Center ("Centralia"), where he is currently incarcerated. Plaintiff claims that he was not given proper medical treatment at Lawrence and Centralia and asserts his transfer to Centralia was retaliatory (Doc. 19). He seeks monetary compensation (Doc. 19, p. 12).

The Court dismissed Plaintiff's original Complaint pursuant to 28 U.S.C. § 1915A and directed him to file a First Amended Complaint if he wished to pursue his claims (Doc. 18).

This case is now before the Court for preliminary review of the First Amended Complaint under 28 U.S.C. § 1915A,[1] which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the pleading that is legally frivolous,

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections and Wexford Health Sources, Inc., to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and these two entities.

1

malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The First Amended Complaint

Plaintiff makes the following allegations in his First Amended Complaint (Doc. 19):[2] On or about July 7, 2022, Plaintiff sought medical attention for his neck, back, coughing and breathing difficulties. Defendant Nurse Practitioner M. Wise saw him on or about July 20, 2022, and diagnosed him with acid reflux. Plaintiff explained that he believed he had pneumonia, had never had acid reflux, and his breathing was badly impaired, but Wise disagreed and prescribed medication for acid reflux (Doc. 19, p. 8). Plaintiff took that medication, but it was not effective in relieving his breathing problems.

On September 22, 2022, shortly after midnight, Plaintiff pressed the panic button in his cell after awakening with violent coughing and difficulty breathing. After a 30-minute delay, John Doe #1 Correctional Officer[3] responded. Plaintiff was taken to the Health Care Unit ("HCU") where Jane Doe #1 examined him and performed tests. Jane Doe #1 told Plaintiff she heard what sounded like fluid in his lower left lung area. Plaintiff told her he was still taking the ineffective acid reflux medication. Jane Doe #1 advised Plaintiff to continue taking that medication and she would refer him for an immediate NP appointment. However, Plaintiff was not called to see a nurse practitioner for four days, a delay which he attributes to Jane Doe #1's inaction.

Plaintiff was called to Nurse Sick Call on September 26, 2022. The nurse who first saw him was concerned by the sound of his lungs and sent him to the HCU, where Defendant Nurse Practitioner Luking ordered x-rays. Those showed cloudiness/fluid in his lungs and Luking ordered an emergency transport for Plaintiff to Carle Hospital, where he was quickly diagnosed with

---

[2] Plaintiff filed supplementary exhibits to his First Amended Complaint at Doc. 23.
[3] The John Doe #1 Correctional Officer is not named as a defendant (Doc. 19, pp. 1-2).

2

Legionnaire's disease (Doc. 19, p. 9).

Back at Lawrence, on September 29, 2022, Plaintiff had a coughing outbreak so violent that he fell out of the wheelchair that was transporting him to the HCU. He was given a breathing treatment and was told he should be on antibiotics, which he was not taking at that time. His October 3, 2022 appointment to see Luking was cancelled, and he saw her on October 6, 2022. Plaintiff asked for an increase in medications to fight off the disease. Luking told Plaintiff his antibiotics were only prescribed for 4-5 days after he left the hospital.

In the early morning of October 9, 2022, Plaintiff fell out of his bottom bunk from a violent cough and aching chest. The Wexford Health Sources, Inc. ("Wexford") employee (Lancaster)[4] who responded believed Plaintiff pulled a muscle and scheduled him for a follow-up with an NP.

Plaintiff saw Luking again on October 10, 2022. She ordered x-rays, a 3-day lay-in from Plaintiff's job assignment, and increased his pain medication. Plaintiff asked for the medications that he was put on at the hospital because he believed he was still suffering from pneumonia. Luking denied that request, stating he should be all right without them. Plaintiff next saw Luking on October 26, 2022, when she ordered him a bottom bunk permit and a sleeve for his right knee, and informed Plaintiff she had scheduled him to see a neurosurgeon.[5] Luking again refused Plaintiff's request to be put back on antibiotics (Doc. 19, p. 10).

Plaintiff had written to Warden Brookhart on September 22, 2022, informing her of his health conditions and treatment on that date. He wrote Brookhart again on September 29, 2022, regarding his hospitalization and diagnosis with Legionnaire's disease, putting her "on notice" of the water contamination at Lawrence. Plaintiff asserts that Brookhart knew the water was contaminated before his diagnosis (Doc. 19, p. 11; Doc. 23, pp. 28-30). On November 6, 2022,

---

[4] Lancaster is not a defendant herein.
[5] Plaintiff does not disclose why he needed to see a neurosurgeon.

3

Plaintiff wrote Brookhart again about the water contamination, after he found a memo in the law library signed by Brookhart on the legionella finding in the prison's water (Doc. 19, p. 10; Doc. 23, p. 12).

On November 11, 2022, Plaintiff saw Defendant Wise again. She noted "extreme wheezing" in his lower left lung. Wise increased some medications, ordered five days of steroids for his lungs, an inhaler (which Plaintiff notes he never received), and five days of a muscle relaxer for Plaintiff's rib pain. However, Wise refused to give Plaintiff antibiotics for his lung condition.

At pill line on November 15, 2022, Plaintiff was told that he was approved to have a legionella test to determine if he still had the condition, and he was to provide a urine sample in the next 48 hours.[6] The next day, November 16, 2022, Plaintiff was told to pack his belongings as he was on transfer to another facility. Plaintiff protested because he had several medical holds but was told they had been lifted. He was transferred to Centralia, in "obvious retaliation" by Brookhart for his letters about legionella and demands for clean drinking water (Doc. 19, p. 12).

At Centralia, on or about November 22, 2022, Plaintiff was seen by Dr. Caldwell[7] who stated he was not supposed to be moved with a pending outside doctor's appointment (the neurologist/neurosurgeon), and asked Plaintiff who he "piss[ed] off?" (Doc. 19, p. 10). The doctor said he would inquire about Plaintiff's outside appointment to see if he could be placed on a waiting list, but the list was already months behind, and Plaintiff would likely be last on the list. Plaintiff had already waited months at Lawrence for the outside appointment. Dr. Caldwell also told Plaintiff that the breathing treatments he was receiving at Lawrence were not available at Centralia.

On December 16, 2022, Plaintiff had a "collapse in breathing" and was rushed from

---

[6] It appears that the legionella test was never performed.
[7] Dr. Caldwell is not listed as a defendant.

4

Centralia to St. Mary's Hospital, and then to Deaconess Hospital in Indiana. He spent nine days in the ICU and another 12 days in a step-down unit (Doc. 19, p. 11; Doc. 23, pp. 36-40).

On or about January 12, 2023, Plaintiff saw Dr. Percy Meyers at Centralia for a follow-up visit from the hospital stay. Dr. Meyers said he "did not believe what he was reading" and could not verify that Plaintiff had obstructive sleep apnea because he didn't have a copy of Plaintiff's sleep study. That study had been done by a pulmonologist. Plaintiff stated that the doctors' orders from Deaconess governed his conditions and the treatments he was given, and he tried to explain the seriousness of his condition. Dr. Meyers ordered Plaintiff to leave, and denied any medical attention (Doc. 19, p. 11).

Based on the allegations in the First Amended Complaint, the Court designates the following claims in this *pro se* action:

| | |
|---|---|
| Count 1: | Eighth Amendment deliberate indifference to serious medical needs claim against Wexford Health Sources, Inc., the Illinois Department of Corrections, Luking, Wise, and Jane Doe #1 for failing to adequately treat Plaintiff's lung/respiratory condition during his incarceration at Lawrence Correctional Center between July 7, 2022 and November 16, 2022. |
| Count 2: | Eighth Amendment deliberate indifference to serious medical needs claim against Wexford Health Sources, Inc., the Illinois Department of Corrections, and Dr. Meyers for failing to adequately treat Plaintiff's lung/respiratory symptoms during his incarceration at Centralia Correctional Center after November 16, 2022. |
| Count 3: | First Amendment retaliation claim against Lawrence Warden Brookhart for transferring Plaintiff to Centralia Correctional Center on approximately November 16, 2022, in retaliation for Plaintiff's complaints regarding the water at Lawrence Correctional Center. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading

standard.[8]

**Preliminary Dismissal**

As Plaintiff was previously advised, he cannot maintain a suit for damages against the Defendant Illinois Department of Corrections, because it is a state government agency (Doc. 18, pp. 4-5). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages). Further, the IDOC cannot be held liable based on the fact that some defendants are its employees. There is no supervisory liability in a § 1983 civil rights action. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). For these reasons, the IDOC will again be dismissed from the action without prejudice.

**Discussion**

**Count 1**

Prison medical providers violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). To establish deliberate indifference to a serious medical need, a plaintiff must show that a prison official acted or failed to act despite his knowledge of a serious risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). "Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."

---

[8] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

*Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). Notably, medical negligence or even malpractice does not violate the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

When Plaintiff first saw Defendant Wise in July 2022 for his coughing and breathing difficulty, she prescribed him medication for what she diagnosed as acid reflux. Plaintiff disagreed with her diagnosis. Wise may indeed have misdiagnosed Plaintiff's ailment, but that does not amount to a constitutional violation. Wise rendered treatment as she believed was appropriate. The mere fact that a prescribed treatment has proven ineffective does not rise to the level of deliberate indifference. *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). Plaintiff cannot maintain a claim for deliberate indifference based on the July 2022 encounter with Wise.

Plaintiff saw Wise again on November 6, 2022, when she ordered several medications for his wheezing and rib pain. She did not prescribe antibiotics for Plaintiff, which he asserts was deliberate indifference. A provider's decision not to give the specific care Plaintiff desired does not amount to deliberate indifference, especially where other reasonable medical treatment is prescribed. Further, a difference of opinion between medical professionals concerning an inmate's treatment will not support a claim for deliberate indifference. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Plaintiff, who is not a medical professional, disagreed with Wise's opinion on appropriate treatment for his condition. This difference of opinion is not sufficient to support his claim of deliberate indifference against Wise. For these reasons, Wise will be dismissed from Count 1.

Plaintiff claims that Jane Doe #1, who said she would have Plaintiff seen "immediately" by a NP during the night of September 22, 2022, failed to ensure a prompt appointment because four days elapsed before he was called out for the NP visit (Doc. 19, p. 8). He states his blood

7

pressure reading was 160/84 when Jane Doe #1 took it, and when he saw Defendant Luking on September 26, 2022, his blood pressure had risen to 170/108 and then 193/92. After reading Plaintiff's x-rays, Luking ordered Plaintiff's emergency transfer to the hospital. The four-day delay from September 22-26 may have endangered Plaintiff and caused him additional harm, thus Plaintiff may proceed on his deliberate indifference claim against Jane Doe #1, once she is identified by name. Of course, further factual development will be necessary to determine whether the delay was caused by this Defendant.

Luking did not exhibit deliberate indifference when she promptly sent Plaintiff to the hospital on September 26, 2022, where he was diagnosed with Legionnaire's disease. Plaintiff had several later visits with her; each time she rendered some treatment and/or ordered tests. On October 6, 2022, Luking told Plaintiff that his course of antibiotics had ended. On October 10, 2022, Luking ordered several tests and increased Plaintiff's pain medication. He requested to be put back on the medications he was given at the hospital, but Luking determined he did not need them. Again, on October 26, 2022, Luking denied Plaintiff's request to be put on antibiotics. As noted above, Plaintiff is not a medical professional, and his disagreement with Nurse Practitioner Luking's assessment of proper treatment for his condition carries no weight. Luking ordered the treatment she believed was appropriate. This did not amount to deliberate indifference, and Luking will be dismissed from Count 1.

Finally, Plaintiff fails to state a claim against Wexford. While the medical provider defendants may be Wexford employees, that is not sufficient to pin liability on Wexford. A corporation such as Wexford can only be held liable for deliberate indifference if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300

8

F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff has not alleged that Wexford had any policy or practice that caused Jane Doe #1's alleged deliberate indifference. Further, Plaintiff has not stated a viable deliberate indifference claim against Luking or Wise, thus their actions cannot support a claim against Wexford. Wexford will be dismissed from Count 1.

To summarize, the deliberate indifference claim in Count 1 will proceed only against Jane Doe #1. Plaintiff must identify her before she can be served with notice of this action.

**Count 2**

Plaintiff did not see Dr. Meyers (at Centralia) until after his January 5, 2023, release from Deaconess Hospital where he had been sent after a "collapse in breathing" (Doc. 19, p. 11).[9] Plaintiff does not explain his diagnosis or what treatment he received at that institution, but his nine-day stay in the ICU and further 12-day hospitalization indicates Plaintiff suffered from a serious medical condition. Likewise, Plaintiff does not disclose what follow-up treatment may have been ordered that he expected Dr. Meyers to follow, but he states that he was found to have obstructive sleep apnea, which is a serious condition. Plaintiff asserts that Dr. Meyers absolutely denied him any medical attention. These factual allegations, while sparse, are sufficient to support a deliberate indifference claim against Dr. Meyers. Again, however, nothing in the First Amended Complaint suggests that Dr. Meyers' alleged deliberate indifference was caused by a Wexford policy or practice. Wexford will therefore be dismissed from Count 2 and from the action.

While Plaintiff states a viable claim against Dr. Meyers, there is no factual or legal

---

[9] Plaintiff states that Centralia did not offer the breathing treatments he had been receiving at Lawrence but says nothing more about whether or to whom he requested any similar treatments, or what resulted from any such request. Plaintiff does not allege that the lack of access to these treatments had any connection to his hospitalization in December 2022, nor does he connect this issue with any named Defendant. Therefore, any claim based on the unavailability of breathing treatments at Centralia is dismissed without prejudice.

9

connection between Jane Doe #1's alleged delay of Plaintiff's treatment that occurred at Lawrence in September 2022 (Count 1), and Dr. Meyers' refusal to provide treatment for Plaintiff at Centralia in January 2023 (Count 2). Unrelated claims against different defendants cannot proceed in the same lawsuit. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Joinder of claims is only proper if the claims against each defendant arise out of the same transaction or occurrence or series of transactions or occurrences and present a question of law or fact common to all. *Id.* There is no such commonality here and the transactions/occurrences in Count 1 and Count 2 are distinct. Accordingly, the Court will exercise its discretion to sever Count 2 against Dr. Meyers into a separate case as improperly joined. *See* FED. R. CIV. P. 18-21; *Dorsey v. Varga*, 55 F.4th 1094, 1103-04 (7th Cir. 2022). Plaintiff will be given the opportunity to voluntarily dismiss the severed case if he does not wish to pursue it.[10]

### Count 3

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). Plaintiff's claim that Defendant Brookhart engineered his transfer away from Lawrence despite the existence of medical holds, after he complained to her about the unsafe water and his legionella infection, is sufficient at this stage for him to proceed with his retaliation claim against Brookhart.

---

[10] When deciding whether to proceed in a new case, a litigant should consider the cost of the case ($350). Additionally, each case is reviewed for issues like the exhaustion of administrative remedies as required by 42 U.S.C. § 1997e(a).

10

### Identification of Doe Defendant

Defendant Brookhart, in her official capacity as Warden of Lawrence Correctional Center, shall respond to discovery aimed at identifying Defendant Jane Doe #1. Plaintiff is responsible for conducting discovery (informal or formal) aimed at identifying this individual. Guidelines for discovery will be set by the undersigned. Once the name of the Doe defendant is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the First Amended Complaint.

### Pending Motions

Plaintiff has filed a second motion for recruitment of counsel (Doc. 21). The undersigned already determined that Plaintiff has made reasonable attempts to find counsel on his own (Doc. 18, pp. 7-8). *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

The remaining inquiry is "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

The instant motion does not present any new information. As in his first request, Plaintiff notes that his education includes "some college," and states that he needs counsel because he has a "misunderstanding of the law" (Doc. 21, p. 2). The First Amended Complaint, as well as Plaintiff's original pleading and motions, reflect that he is articulate and capable of stating the

11

relevant facts and his legal claims. Therefore, the recruitment of counsel is not warranted at present, and the motion (Doc. 21) is **DENIED** without prejudice. If Plaintiff encounters significant difficulties in self-representation as this case proceeds, he may file a new motion seeking recruitment of counsel.

Plaintiff's Motion for Leave to Proceed *in forma pauperis* "IFP" (Doc. 20) is **DENIED AS MOOT**. Plaintiff has already been granted IFP status in this action (Doc. 8).

### Disposition

For the reasons stated above, Count 2 against Dr. Percy Meyers is **SEVERED** into a new case. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The First Amended Complaint (Doc. 19) and Exhibits (Doc. 23);
- Plaintiff's most recent motion to proceed IFP (Doc. 20).

In the new case, Plaintiff shall have the option to proceed on Count 2 or to dismiss the case without prejudice and before he is required to pay a fee.

The only claims remaining in this case are Counts 1 and 3. Count 2 and Dr. Meyers are **DISMISSED** from *this* case with prejudice.

**IT IS HEREBY ORDERED** that Count 1 against Jane Doe #1 and Count 3 against Brookhart survive initial screening as described above. Plaintiff's Motion for Service of Process at Government Expense (Doc. 22) is **GRANTED** in part; the Court will issue service on Defendant Brookhart but will not serve the dismissed Defendants.

The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Illinois Department of Corrections, Wexford Health Sources, Inc., C. Luking, and M. Wise, because Plaintiff has failed to state a claim upon which relief may be granted against these parties.

The Clerk shall prepare for DeeDee Brookhart (in her individual capacity, and in her official capacity as Lawrence Warden): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 19), and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court

and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the First Amended Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  December 27, 2023**

*s/ Reona J. Daly*
**REONA J. DALY**
**United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendant of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendant will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendant's Answer, but it is entirely possible that it will take **90 days** or more. When Defendant has filed their Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendant before filing any motions, to give the Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.